```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
MICHELE NICOLOSI-RUSSO,                                     :
                                                            :
                             Plaintiff,                     :
                                                            :    05 Civ. 9373 (GEL)
           -against-                                        :
                                                            :    OPINION AND ORDER
PROGRAM BROKERAGE CORPORATION,                              :
                                                            :
                             Defendant.                     :
                                                            :
------------------------------------------------------------x
```

Robert David Goodstein, Eileen West, and Paula Johnson Kelly, Goodstein & West, New Rochelle, New York, for Plaintiff.

John E. Higgins and Vincent E. Polsinelli, Nixon Peabody LLP, Albany, New York, for Defendant.


GERARD E. LYNCH, District Judge:

Defendant Program Brokerage Corporation ("Program") moves to dismiss this action, brought by Michele Nicolosi-Russo, a former employee, pursuant to federal, state, and local laws that prohibit employment discrimination. The motion will be denied.

## BACKGROUND

Program employed Nicolosi-Russo from some time before the events alleged until approximately February 4, 2005.[1] Her immediate supervisor was Cynthia O'Brien. On about January 6, 2005, Nicolosi-Russo complained to a Mr. Savage (apparently a responsible Program

---

[1] For purposes of resolving this motion, the Court must accept as true the facts alleged by plaintiff in her complaint and incorporated allegations. Unless otherwise attributed, the facts set forth in this section are taken solely from plaintiff's complaint.

executive) that "O'Brien had engaged in hostile environment employment discrimination by making offensive comments, such as repeatedly stating 'fucking Jew brokers' and disparaging comments regarding 'Asian brokers.'" (Compl. ¶ 6.) She further reported that O'Brien had also made "off-color comments regarding the tsunami and the race of its victims." (Id.) Nicolosi-Russo told Savage that she "took these racist comments in a negative fashion" because "her significant other was of African descent." (Id.) Savage offered to speak with O'Brien, outside plaintiff's presence, about these comments. Nicolosi-Russo agreed.

Approximately one week after this discussion with Savage, O'Brien informed Nicolosi-Russo that "this was not going to work out," because O'Brien wished to feel free to "speak the way she did without distraction and without thinking that someone was keeping a file on her." (Id. ¶ 7.) O'Brien challenged plaintiff to decide whether she could continue to work "on [O'Brien's] terms." (Id.) O'Brien's offensive remarks continued, including use of the term "guinea clubs" to describe potential new clients. (Id. ¶ 8.) On February 4, 2005, O'Brien fired Nicolosi-Russo, stating that her termination was "a follow-up to the conversation a month ago," and further asserting that plaintiff "was not meeting expectations." (Id. ¶ 9.)

Nicolosi-Russo filed a charge with the Equal Employment Opportunity Commission, signed on April 5 and received on April 13, 2005, alleging retaliation. (Compl. Ex. 1.) Her statement of facts to the EEOC mirrors, verbatim, the discrimination-related facts alleged in her complaint to this Court. After investigating, the EEOC dismissed the charge, advising that it had been "unable to conclude that the information obtained establishes violations of the statutes," and issued a right-to-sue letter on September 12, 2005. Plaintiff filed this action on November 4, 2005.

Program now moves to dismiss the case, arguing that the allegations of Nicolosi-Russo's complaint and incorporated EEOC charge, even taken as true, do not entitle her to any legal relief.  Besides objecting to the sufficiency of the complaint itself, defendant insists that the allegations set forth in an affidavit appended to Nicolosi-Russo's motion papers may not be considered in connection with this motion, because they were not set forth in the complaint and because plaintiff's failure to exhaust her administrative remedies by including them in her EEOC complaint deprives the Court of jurisdiction to address them.

## DISCUSSION

I.   Legal Standards

    A.   Motions to Dismiss

A defendant is entitled to dismissal of a complaint only if it can show either that the complaint fails to provide fair notice of the basis of plaintiff's claims, Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512-14 (2002), or that "it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim[s] which would entitle [her] to relief." Patel v. Searles, 305 F.3d 130, 135 (2d Cir. 2002) (internal quotation marks omitted).

When deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must take as true the facts as alleged in plaintiff's complaint. Bolt Elec., Inc. v. City of New York, 53 F.3d 465, 469 (2d Cir. 1995).  It may consider documents attached to the complaint as exhibits or incorporated in it by reference. Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993); see also Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (determining that documents were properly considered in a motion to dismiss as plaintiff had relied on the documents in drafting the complaint).  All reasonable inferences must

be drawn in the plaintiff's favor. Freedom Holdings, Inc. v. Spitzer, 357 F.3d 205, 216 (2d Cir. 2004). However, "[g]eneral, conclusory allegations need not be credited . . . when they are belied by more specific allegations of the complaint." Hirsch v. Arthur Andersen & Co., 72 F.3d 1085, 1092 (2d Cir. 1995); Whyte v. Contemporary Guidance Servs., Inc., No. 03 Civ. 5544 (GBD), 2004 WL 1497560, at *3 (S.D.N.Y. July 2, 2004).

      B.      Title VII Retaliation

Under Title VII of the Civil Rights Act of 1964 ("Title VII"), it is unlawful "for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a). An "unlawful employment practice" is defined as follows:

> It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a)(1). One who opposes employer conduct need not know for certain that an unlawful employment practice has occurred, but need only have a "good faith, reasonable belief" that the troubling practice was unlawful. Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1178 (2d Cir. 1996) (internal quotation marks and citation omitted). The same standards apply to employment discrimination claims brought under Title VII as to claims brought under New York State and New York City antidiscrimination laws. See Keady v. Nike, Inc., 116 F. Supp. 2d 428 (S.D.N.Y. 2000); see also Torres v. Pisano, 116 F.3d 625, 629 n.1 (2d Cir. 1997) ("[C]laims brought under New York State's Human Rights Law are analytically identical to claims brought under Title VII.") (citation omitted).

4

      C.      <u>Claims Involving Discrimination Against Non-Employees</u>

Title VII and the related state and local laws protect against discrimination in *employment*. Correspondingly, the prohibition against retaliation protects employees who challenge specifically employment-related discrimination. As the Second Circuit has noted, "Title VII is not a general bad acts statute . . . . [A] claim of retaliation is not cognizable under Title VII [unless plaintiff's] opposition was . . . directed at an unlawful *employment practice* of his employer." <u>Wimmer v. Suffolk Cty. Police Dep't</u>, 176, F.3d 125, 134-35 (2d Cir. 1999) (internal quotation marks and citation omitted) (emphasis in original). In <u>Wimmer</u>, the Court affirmed a judgment as a matter of law for defendant where an employee had claimed retaliation after being terminated for "having reported overhearing racial slurs made by [colleagues] against black citizens," and where "[t]here [was] no claim that any of this activity was directed at [plaintiff] or any of his co-employees"). <u>Id</u>. As the Court observed, Wimmer "could not have reasonably believed that he was opposing an employment practice because the evidence does not address racial discrimination in an employment practice." <u>Id</u>. at 136. "It is inherent in the definition of a racially hostile work environment . . . that the person against whom the hostility is directed must be in an employment relationship with the employer." <u>Id</u>.

II.      <u>The Standards Applied</u>

Relying on <u>Wimmer</u>, Program argues that Nicolosi-Russo's allegations, at least considering only those made in the complaint itself, cannot make out a claim of unlawful retaliation under the employment discrimination laws, because the rude remarks of which she complained to Savage could not be construed as statutorily covered discrimination in the workplace. Although the legal premise is correct, the argument ultimately fails because it is

based on a crabbed reading of the complaint. Although the complaint *could* be read as asserting that Nicolosi-Russo had complained of offensive remarks affecting only non-employees, it could also be read more broadly, and a complaint must be sustained if relief could be granted based on any evidence that could be proved in support of the allegations in the complaint.

      A.      <u>Discrimination Against Non-Employees</u>

Program is correct that Nicolosi-Russo's complaints to Savage that her supervisor disparagingly commented about the race of tsunami victims or about the ethnicity of potential clients, even taken as true, do not standing alone constitute actions protected under the anti-discrimination laws, because they do not concern unlawful employment practices. Such remarks, while deplorable, are precisely the sort of non-work-related social comments that, under <u>Wimmer</u>, fall outside the scope of employment discrimination law. Any claim relying solely on allegations of defendant's discriminatory attitude toward, or treatment of, non-employees is thus dismissed as failing to state a claim of employment discrimination.

      B.      <u>Discrimination Against Other Employees</u>

Plaintiff's complaint need not, and therefore should not, be read so narrowly, however. Nicolosi-Russo does not say that she complained simply that O'Brien was a bigot. Rather, she alleges that she complained that "O'Brien had *engaged in hostile environment employment discrimination*," by making comments "*such as*" those disparaging Jewish and Asian brokers. (Compl. ¶ 6; emphasis added.) This allegation can easily be read as a complaint that O'Brien created a hostile work environment for defendant's employees. An employee who opposes conduct she reasonably believes to constitute prohibited discrimination against herself or against a fellow employee is engaged in activity protected from retaliatory discrimination.

Program assumes that such an employment-based retaliation claim could arise only from facts alleged in plaintiff's motion-related affidavit and that such a claim cannot be supported by any fact suggested in the complaint. It therefore argues that the Court may not consider the facts set forth in the affidavit. There is no need, however, for the Court to reach outside the complaint, as the complaint itself suggests the existence of facts that could support a claim for relief based on defendant's retaliatory termination of plaintiff after plaintiff opposed discrimination against fellow employees.

Certainly, it is unclear whether such a claim would ultimately succeed. The only facts specifically pled in the complaint that could support such a claim amount to the allegation that O'Brien "repeatedly" referred to "fucking Jew brokers" and derided "Asian brokers." (Compl. ¶ 6.) The complaint does not explicitly allege that the brokers referred to were plaintiff's fellow employees, rather than competitors, clients or potential clients of defendant or simply members of the general public. Nevertheless, it is hardly an unreasonable inference that the brokers referred to were plaintiff's coworkers. Defendant, after all, employs "brokers."[2] Any doubt as to the referent of "brokers," as the term is used in the complaint, must be resolved in favor of plaintiff on this motion to dismiss.

Nor is it beyond doubt that the alleged discriminatory comments did not reference the race or ethnicity of any of plaintiff's coworkers. While plaintiff's complaint does not actually articulate any such link between O'Brien's comments and the protected status of any employee,

---

[2] An exhibit submitted with defendant's own reply brief, consisting of the record of plaintiff's EEOC case, includes a statement on defendant's letterhead describing defendant corporation as "a wholesale insurance brokerage firm . . . . [where a] wholesale broker assists retail brokers in obtaining insurance policies for their clients." (D. Rep. Aff., Ex. A, certified copy of Nicolosi-Russo's EEOC file, EEOC 4.)

such a link is perfectly plausible on the face of the pleading, and defendant does not demonstrate that such a link could not exist.[3]  Again, any doubt at this stage must be resolved in plaintiff's favor.[4]  It is, of course, not necessary for plaintiff ultimately to establish that any particular employee was subjected to conditions that rise to the level of a hostile work environment.  Liability will be established if Nicolosi-Russo can show that she complained about conduct that she, in good-faith, reasonably believed to be unlawful.  Reed, 95 F.3d at 1178.

The allegations upon which this Court relies in denying defendant's request for dismissal on this ground were submitted, in identical terms, to the EEOC.  There can be no dispute, then, that plaintiff adhered to the administrative exhaustion requirements of Title VII, 42 U.S.C. § 2000e-5, on this claim or that the EEOC had sufficient notice to investigate "broker"-related, and thus potentially employee-related, discrimination issues.  See, e.g., Williams v. New York City Housing Authority, 458 F.3d 67 (2d Cir. 2006).  The Court therefore properly exercises jurisdiction over this claim.[5]

---

[3] Even if the Court could refer to facts outside the pleading to resolve this issue – which it cannot – defendant's submission of an exhibit listing the apparently ethnically diverse names of plaintiff's immediate coworkers, seemingly intended to demonstrate its inclusiveness, only perpetuates uncertainty about whether O'Brien's alleged comments could be taken as referring to Jewish or Asian employees of defendant. (D. Rep. Aff., Ex. A., May 9, 2005, letter of D. to EEOC, EEOC 62.)

[4] It is especially important to take a broad view of complaints alleging retaliation, as retaliation claims serve a normative purpose beyond protecting particular employees from discrimination.  As the Second Circuit recently explained in holding that the standard for finding an "adverse" action on a retaliation claim favorably differs from that on a non-retaliation discrimination claim, the prohibition against retaliation is intended generally to prevent employers' interference with enforcement of the law.  Kessler v. Westchester County Dept. of Social Services, 461 F.3d 199, 208 (2d Cir. 2006) (citing Burlington Northern and Santa Fe Ry. Co. v. White, 126 S.Ct. 2405 (2006)).

[5] While the complaint's allegations may thus be sustained without reference to the additional allegations in Nicolosi-Russo's supplemental affidavit, it is appropriate to comment

At this stage, the Court cannot weigh the sufficiency of the evidence to support a conclusion that retaliation occurred, but may only determine whether plaintiff is entitled to offer such evidence on an even remote possibility of such a conclusion. See Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir.1996) (on Fed. R. Civ. P. 12(b)(6) motion, the "issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims") (internal quotation marks and citations omitted). Thus, defendant's motion to dismiss as to plaintiff's claim of retaliation for opposing discrimination against her coworkers is denied.

### C.  Discrimination Against Plaintiff Herself

Nicolosi-Russo argues that her complaint also charges that she was retaliated against for opposing the working atmosphere to which she herself was subjected. In opposing the motion to dismiss, for example, she contends that she was subjected to a "barrage of slurs made directly to her." (P. Mem. 7.) Allegations that plaintiff had been subjected to workplace discrimination herself and was then fired for protesting such discrimination would clearly entitle plaintiff to

---

briefly on defendant's argument that plaintiff's failure to include these specific allegations in her EEOC complaint bars the Court from considering them. Nicolosi-Russo's claim, both to the EEOC and to this Court, is that she was fired in retaliation for her complaints about O'Brien. She exhausted her administrative remedies on this claim, and it is squarely before the Court. While she may not now assert new *claims* of Title VII violations not presented to the EEOC (unless those claims were "reasonably related" to her EEOC charge or would have been expected to come to the attention of the agency while it investigated the claim she did present, Williams, 458 F.3d at 70-71), the exhaustion of remedies requirement does not limit the scope of the *evidence* that Nicolosi-Russo may present to establish the validity of the charge already made. Under the notice pleading practice established by Rule 8, Fed. R. Civ. P., a plaintiff is not required to set forth in a complaint all the facts on which she relies, see Swierkiewicz, 534 U.S. at 511-13, and EEOC charges, which are frequently filed without the assistance of counsel, are not subject to stricter pleading rules. To the extent that Nicolosi-Russo's affidavit further elaborates on the contents of her complaints to Savage, or other facts supporting her claim that she was fired because of those complaints, such elaborations are simply evidentiary matter that may at the appropriate stage of the litigation be relevant to assessing the accuracy of the allegations made in the complaint.

proceed with her claim for relief from discriminatory retaliation.  However, plaintiff has not sufficiently alleged facts that give content to the general statement, made for the first time in her motion papers, that slurs were directed at her, or that she was fired for protesting circumstances that could reasonably have been believed to constitute discrimination against her.

The complaint does not allege that Nicolosi-Russo is Asian or Jewish; indeed, it contains no allegation at all regarding her ethnicity or religion, nor any suggestion that the unpleasantness of her working environment was in any way directed to her own "race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Neither the complaint nor Nicolosi-Russo's supplemental affidavit contends that Nicolosi-Russo told Savage that O'Brien was discriminating against *her*.[6]

Indeed, it is apparent from plaintiff's brief that she altogether misconceives the notion of a cognizably "hostile" work environment.  She contends that "she personally was subjected to a hostile work environment because of comments made about third parties" and because "the activities taken against third parties affected [her] work environment," and that she "engaged in protected

---

[6] Besides O'Brien's alleged comments about Asians and Jews, the complaint refers to two other ethnicities.  First, it is alleged that O'Brien referred to certain potential clients as "guinea clubs." (Compl. ¶ 8.) "Guinea" has been defined as a derogatory term for "[a]n Italian [or] a person of Italian descent." Wentworth and Flexner, Dictionary of American Slang, 234 (2d supp. ed. 1975).  Plaintiff nowhere even hints at an interpretation of that comment as discrimination against herself; even if that single comment were construed as a slur directed at Nicolosi-Russo, the complaint nowhere alleges that she protested against any such slur prior to being terminated, and plaintiff explicitly alleges that this comment was uttered *after* she had complained internally about her supervisor's conduct.  (Compl. ¶ 8.)

Second, plaintiff alleges that she told Savage that she took offense at O'Brien's bigotry because "her significant other was of African descent."  (Id. ¶ 6.)  However, the complaint does not allege that O'Brien made offensive remarks about Africans, or African Americans, or persons who associated with them, or that O'Brien was aware of Nicolosi-Russo's relationship or discriminated against her because of it.

activity by registering opposition" to that "hostile environment." (P. Mem. 5, 9.) While there is no question that courts may consider comments referencing non-employee third parties in determining whether an individual was subjected to a hostile work environment, see, e.g., Schwapp v. Town of Avon, 118 F.3d 106 (2d Cir. 1997), plaintiff fatally misses the requirement that those comments nevertheless relate to some notion of *discrimination* – based on a protected trait of plaintiff's, such as gender or race – *against plaintiff* (or, against another employee, as previously discussed). In other words, to be taken toward a cognizable employment discrimination claim, it is necessary that any allegation of offensiveness about third parties suggest some *discriminatory link* between that offensiveness and plaintiff (or other employee[7]). See 42 U.S.C. § 2000e-2(a)(1) (prohibiting only discrimination against an individual "*because of* such individual's race, color, religion, sex, or national origin") (emphasis added); Gregory v. Daly, 243 F.3d 687, 691-92 (2d Cir. 2001) ("[H]arms suffered in the workplace are cognizable under Title VII, . . . if they arise from conduct . . . that creates [a hostile] environment because of plaintiff's sex (or other characteristic protected by Title VII) [the 'prohibited causal factor' requirement]") (citing Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998)) (second brackets in original); Demoret v. Zegarelli, 451 F.3d 140, 149 (noting that a plaintiff alleging subjection to a hostile work environment must demonstrate the existence of "*discriminatory* intimidation, ridicule, and insult") (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (emphasis added) (internal quotation marks omitted); Nelson v. Beechwood Organization, 03 Civ. 4441 (GEL), 2006 WL 2067739, *3 (S.D.N.Y. July 26, 2006) ("[P]laintiff

---

[7] It is possible, for instance, that the alleged third-party-referencing remarks could support plaintiff's properly pled allegations of discrimination against her co-workers, should some logical link between the subject matter of the remarks and the protected status of those co-workers be established.

must prove that the hostile environment is the result of discrimination 'because of' a protected ground, in this case, [plaintiff's] race.")

An example should make this clear. No doubt most white Americans would find it offensive to have to listen to a supervisor's racist disparagement of African Americans. But Title VII does not protect everyone merely from having to work for an obnoxious or rude boss; rather, such offensive remarks would support a Title VII claim only when complained of by, or on behalf of, employees of color, because they may constitute evidence that these employees were being subjected to less desirable working conditions than were white employees *on the basis of race*. See, e.g., Gregory, 243 F.3d at 691-92; Oncale, 523 U.S. at 80. The white employees, if complaining merely on behalf of themselves, would not have a cause of action regardless of the reprehensibility of their supervisor's behavior.[8] In short, an *offensive* work environment does not constitute a *hostile work environment* in the statutory sense unless the offensiveness is discriminatorily inflicted on members of a protected group. Nicolosi-Russo does not allege that O'Brien's unpleasant remarks were made to her on account of her race, gender, or national origin.

None of the cases plaintiff cites in which comments about third parties were held to support a claim of hostile environment discrimination erases the requirement of some discriminatory relationship between the offense and a protected employee. See Whidbee v.

---

[8] Conversely, a discriminatorily hostile work environment need not involve explicit slurs directed at the employee's race, gender or ethnicity. Liability is established where an employee is abused in a manner "sufficiently sever or pervasive to alter the conditions of the victim's employment and create an abusive working environment" because of the employee's race, gender, religion or national origin. Demoret v. Zegarelli, 451 F.3d 140, 149 (2d Cir. 2006), quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993) (internal quotation marks omitted). *How* the victim is abused does not matter; what matters is *why* the abuse occurs.

Garzarelli Food Specialities, Inc., 223 F.3d 62 (2d Cir. 2000) (derogatory remarks about other black employees to be taken as evidence for black plaintiffs' hostile work environment claim); Schwapp, 118 F.3d 106 (racist comments about African-American third parties relevant to hostile work environment claim of African-American employee); Preda v. Nissho Iwai American Corp., 128 F.3d 789 (2d Cir. 1997) (implicitly deeming employer memoranda deriding minorities, women, older employees, and Americans in general, to constitute grounds for plaintiff reasonably to believe there was discrimination against fellow employees); Kelly v. Senior Centers, Inc., 169 Fed. Appx. 423 (6th Cir. 2006) (implicitly deeming allegations of defendant's antiblack commentary about clients to support white plaintiff's retaliation claim, where the workplace included black employees);[9] Montelongo v. Chase Manhattan Mortg. Corp., No. 04 Civ. 1376 (AS), 2005 WL 2346088, *5 (D.Or., Sept. 22, 2005) ("Chase challenges Montelongo's hostile work environment claim on the ground that none of the allegedly racially or ethnically derogatory statements were directed toward her . . . . [But, v]iewing the evidence in the light most favorable to Montelongo, the record includes allegations of conduct of a racial nature and conduct engaged in because of Montelongo's race."); Turner v. Barr, 811 F. Supp. 1 (D.D.C. 1993) (commentary about Holocaust supported Jewish plaintiff's claim of hostile work environment).

It would not have been reasonable for Nicolosi-Russo to believe that generally offensive commentary in the workplace, lacking any relationship to any trait of her own, constituted

---

[9] Plaintiff in Kelly did not claim that he himself had been subjected to a racially discriminatory work environment. Rather, he claimed he had been subjected to *retaliation* for complaining about racist commentary about his employer's black clients, and it was alleged that some of his co-workers were black.

employment discrimination against herself. See Wimmer, 176 F.3d at 135-36. Thus, plaintiff cannot claim that her termination was retaliation for opposing unlawful discrimination against herself.

## CONCLUSION

To the extent that plaintiff complains that she was retaliated against for complaining that O'Brien's alleged obnoxious remarks were generally offensive, or offensive to plaintiff, she does not state a viable claim under Title VII or the corresponding state and city anti-discrimination laws. However, because her complaint can be read to allege that she complained about the existence of a hostile work environment regarding other employees, she properly alleges that she engaged in activity protected by Title VII and was fired in retaliation for such activity. Defendant's motion to dismiss is therefore denied.

SO ORDERED.

Dated: New York, New York
       December 13, 2006

_____
GERARD E. LYNCH
United States District Judge